UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

- against -

ANY AND ALL VIRTUAL CURRENCY ON DEPOSIT IN A XAPO, INC. ACCOUNT WITH USER ID 9488645, WALLET ID: 15891718 WITH WALLET ADDRESS: 3AfXiK8errg2WffF4PCwKkPUwMVQfcB9GK, HELD IN THE NAME OF ERNESTO PLAZA VERNAZA, WITH ASSOCIATED EMAIL ADDRESS: ernestoplazavernaza07@gmail.com, AND ALL PROCEEDS TRACEABLE THERETO,

Defendant *in rem*.

**REPORT AND RECOMMENDATION**

25-cv-4097 (DG)(PK)

**Peggy Kuo, United States Magistrate Judge**

Plaintiff United States of America commenced this civil *in rem* forfeiture action, pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A), to forfeit and condemn the funds held in a XAPO Inc. cryptocurrency account with the User ID 9488645, Wallet ID: 15891718 with Wallet Address: 3afxik8errg2wfff4pcwkkpuwmvqfcb9gk, held in the name of Ernesto Plaza Vernaza, with associated email address: ernestoplazavernaza07@gmail.com, and all proceeds traceable thereto (the "Defendant Account") for its use and benefit. (Compl. ¶ 1, Dkt. 1.) Plaintiff complied with relevant procedural requirements for notice, but no claimant has asserted an interest in the Defendant Account by filing a claim in accordance with Rule G(5)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). (Pl. Mem., Dkt. 11.)

The Government now moves for entry of default judgment and decree of forfeiture (the "Motion," Dkt. 11) pursuant to Rule 55(b)(2), 21 U.S.C. § 881(a)(6), and 18 U.S.C. § 981(a)(1)(A). (Pl. Mem. at 6–11.) The Honorable Diane Gujarati referred the Motion to me for a Report and

Recommendation. (Feb. 17, 2026 Order.) For the reasons discussed below, I respectfully recommend that the Motion be granted.

## **FACTUAL BACKGROUND**

The following facts are taken from the uncontested allegations in the Complaint and are assumed to be true for the purpose of deciding the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

In approximately 2009, the Drug Enforcement Administration (the "DEA") began an investigation targeting major narcotics and money laundering networks affiliated with the Pecoso Drug Trafficking Organization (the "Pecoso DTO") based in Colombia, and the Sinaloa Cartel, based in Mexico. (Compl. ¶¶ 13–14.) The Pecoso DTO and Sinaloa Cartel exported large quantities of cocaine into the United States and laundered the proceeds from their narcotic sales through a network of money brokers (the "Brokers"). (*Id.* ¶ 15.) Over the course of its investigation, the DEA worked with several undercover and confidential sources (the "Sources"), who infiltrated various money broker networks and directly negotiated with the Brokers to collect and launder proceeds from narcotic sales. (*Id.* ¶¶ 14–15.)

Brokers arranged pickups of proceeds with the undercover agents and Sources, providing telephone numbers of couriers and "safe codes." (*Id.* ¶ 18(a).) They paid a percentage of the funds as a commission. (*Id.* ¶ 18(b).) The transfer of the money "generally occurred in public places, such as busy streets, parking lots or shopping malls," and, at times, the money was retrieved from hidden compartments in vehicles. (*Id.* ¶ 18(c).) The "currency was wrapped in plastic heat-sealed bags or heavily perfumed packaging to mask the odor of narcotics," or "wrapped with rubber bands and/or stored in shoe boxes inside large shopping bags." (*Id.* ¶ 18(d).) Brokers also directed the Sources and undercover agents to conduct wire transfers of illegal proceeds to designated business and personal

accounts, with instructions that included separating large amounts of currency into smaller amounts to be transferred to multiple accounts. (*Id.* ¶¶ 16–18.)

On or around January 24, 2018, law enforcement arranged through a Broker for pickup of a bag containing $100,895 in Boston, Massachusetts. (*Id.* ¶¶ 19–20.) It also arranged through a Broker for pickup of a bag containing $61,610 in Chicago, Illinois. (*Id.* ¶ 20) Law enforcement picked up these two bags, and the money from both pickups were deposited into an undercover DEA bank account ("DEA Account #1") maintained in New York, New York. (*Id.* ¶¶ 19–20.)

On January 25, 2018, law enforcement transferred the combined amount from the two pickups of $162,505[1] from DEA Account #1 to a second undercover DEA account ("DEA Account #2") maintained in Brooklyn, New York. (*Id.* ¶ 21.) On January 30, 2018, based on instructions from the Brokers, law enforcement transferred $153,216 (consisting of $162,505, less commissions of $9,289) from DEA Account #2 to an undercover DEA Coinbase account ("DEA Coinbase Account") in exchange for 13.4843 Bitcoin ("BTC"). (*Id.* ¶ 22.)

On or about March 2, 2018, a Source at XAPO Inc. established the Defendant Account, using the fictitious name Ernesto Plaza Vernaza, for the purpose of laundering money under the direction and supervision of federal law enforcement agents. (*Id.* ¶ 24.)

On March 6, 2018, at the direction of a Source, law enforcement transferred 13.02962468 BTC from the DEA Coinbase Account to the Defendant Account, where the currency currently remains. (*Id.* ¶¶ 23–24.) On May 19, 2021, the Court issued a seizure warrant for the Defendant Account, finding probable cause to believe it violated federal statutes that prohibit drug trafficking and money laundering. (*Id.* ¶ 25.)

[1] The Complaint misstates this amount as $162,025 (*see id.* ¶ 21).

## PROCEDURAL HISTORY

On July 25, 2025, Plaintiff commenced this civil forfeiture action *in rem* setting forth facts in support of the forfeiture of the Defendant Account, pursuant to 21 U.S.C. § 881(a)(6) as property that represents moneys furnished in exchange for a controlled substance in violation of 21 U.S.C. § 841 that prohibits drug trafficking, and pursuant to 18 U.S.C. § 981(a)(1)(A), as property, real or personal, involved in a transaction or attempted transaction, in violation of 18 U.S.C. § 1956 that prohibits money laundering. (Compl. ¶ 1.)

On August 1, 2025, the Court issued a Warrant for the Arrest of Articles *in rem* (the "Warrant," Dkt. 4). Plaintiff then published notice of this civil forfeiture action on an official government website, www.forfeiture.gov, for 30 consecutive days, from September 10, 2025 to October 9, 2025. (Decl. of Publication, Dkt. 5.)

No one has filed a claim for the Defendant Account, or an answer, or other response to the Complaint. (Pl. Mem. at 2.) Plaintiff represents that it is not aware of any known potential claimants to the Defendant Account. (Pl. Dec. 15, 2025 Letter, Dkt. 6.)

On January 23, 2026, the Clerk of Court entered a Certificate of Default. (Dkt. 9.) On February 13, 2026, Plaintiff filed the Motion.

### I. Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court is instructed to enter the defendant's default. Fed. R. Civ. P. 55(a). After the Clerk enters the default, the plaintiff may "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Before entering default judgment, a court must review the complaint to determine whether the plaintiff has stated a valid claim for relief. *Finkel*, 577 F.3d 79 at 84. In its review, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor . . . ." *Id.*

When a defendant fails to answer a complaint or oppose a motion for default judgment, they are deemed to have admitted the well-pleaded factual allegations in the complaint. *Greyhound Exhibit Grp., Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

## II. Legal Framework for Civil Forfeiture

"In civil forfeiture actions, the government brings a civil action against the property itself as an *in rem* proceeding . . . ." *United States v. Fifty Thousand Six Hundred Ninety-Nine Dollars & Fifty Cents in U.S. Currency Seized from Bank of Am. Acct. No. XXXXXXXXXXXX Held in the Name of Knightsbridge Priv. Partners LLC*, No. 19-CV-5408 (RPK) (RLM), 2020 WL 8413547, at *3 (E.D.N.Y. June 16, 2020), *report and recommendation adopted sub nom.* 2020 WL 7640021 (E.D.N.Y. Dec. 22, 2020). *In rem* forfeiture actions arising from a federal statute are governed by Supplemental Rule G, *see United States v. Vasquez-Alvarez*, 760 F.3d. 193, 197 (2d Cir. 2014), and the "Federal Rules of Civil Procedure also apply . . . except to the extent that they are inconsistent with the Supplemental Rules." Suppl. R. A(2); *accord United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, No. 13-CV-5567 (MKB), 2015 WL 5178121, at *4 (E.D.N.Y. Sep. 2, 2015), *aff'd sub nom.* 682 F. App'x 17, 20 (2d Cir. 2017).

Pursuant to Supplemental Rule G(2), a complaint must include six elements, five of which "are largely formal" and one that is "substantive." *United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, 324 F. Supp. 3d 38, 48 (D.D.C. 2018). Regarding the formal elements, a complaint for forfeiture *in rem* must be verified; state the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the Defendant Account, and venue; describe the property with reasonable particularity; and identify the statute under which the forfeiture action is brought. Suppl. R. G(2)(a)–(e). As to the substantive element, the complaint must state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. Suppl. R. G(2)(f).

To comply with the applicable notice requirements for forfeiture *in rem* actions, Plaintiff "must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the Government." Suppl. R. G(4)(b)(i). Unless certain conditions are met, it must also provide notice by publication, which can be effectuated by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days." Suppl. R. G(4)(iv)(C). "The government need not provide formal service of process in a civil forfeiture proceeding; it must only give notice 'to any person who reasonably appears to be a potential claimant on the facts known to the government,' and it may do so by any 'means reasonably calculated to reach the potential claimant.'" *See United States v. Starling*, 76 F.4th 92, 96 n.2 (2d Cir. 2023) (citing Suppl. R. G(4)(b)(i), (iii)(A)).

Once the Government has commenced a forfeiture *in rem* action, any claimant "who asserts an interest in the defendant [account] may contest the forfeiture by filing a claim in the court where the action is pending." Suppl. R. G(5)(a)(i); *accord Vazquez-Alvarez*, 760 F.3d. at 197. "[T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

## DISCUSSION

### I. Compliance with Local Civil Rules and Federal Rules of Civil Procedure

After the expiration of time for the filing of verified claims to the Defendant Account, Plaintiff moved for a certificate of default. (Dkt. 7.) The Clerk of Court entered default on January 23, 2026. (Dkt. 9.) In compliance with Local Rule 55.1(a)(2), as part of the Motion, Plaintiff submitted an attorney declaration (Dkt. 11-1), as well as a proposed order (Dkt. 11-2). In compliance with Local

Rules 7.1(a)(2) and 55.2(a)(2), Plaintiff submitted a memorandum of law in support of the Motion (Dkt. 11).

I find, therefore, that Plaintiff has satisfied the requirements of the Local Rules and Federal Rules of Civil Procedure.

## II. Compliance with Supplemental Rule G

### *A. Warrant Requirements of Supplemental Rule G(3)*

Pursuant to Supplemental Rule G(3), upon Plaintiff's showing of probable cause to believe that the Defendant Account constitutes property subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A), the Court issued the Warrant.

### *B. Notice Requirements of Supplemental Rule G(4)*

Pursuant to Supplemental Rule G(4), Plaintiff published public notice of the action on an official government forfeiture website from September 10, 2025 to October 9, 2025. (Decl. of Publication.) No claim was filed in response. (Pl. Mem. at 2.)

Plaintiff affirmed that based on the facts known to it, "there are no known potential claimants who have an interest in the Defendant Account." (Pl. Dec. 15, 2025 Letter at 2.) It points out that "because the Defendant Account was created utilizing a fictitious name at the direction of law enforcement to facilitate undercover operations into the laundering of narcotics proceeds," the only account holder is a fictitious person. (*Id.*) Moreover, the only other potential claimant would be Plaintiff, who created the Defendant Account. (*Id.*)

Accordingly, I find that the Plaintiff has satisfied the requirements of Supplemental Rule G(4).

### *C. Pleading Requirements of Supplemental Rule G(2)*

The Complaint is verified. (Dkt. 1 at 12.) The Court has subject matter jurisdiction over this action because Plaintiff is the United States, *see* 28 U.S.C. § 1345, and because this is a forfeiture action, *see* 28 U.S.C. § 1355. The Court has *in rem* jurisdiction pursuant to 28 U.S.C. § 1355(a) because district

courts are granted "original jurisdiction" over any action of "forfeiture." Venue is proper in this District because the "acts and omissions giving rise to the forfeiture occurred" here. (Compl. ¶ 3.) Plaintiff describes the property with reasonable particularity by specifying the Defendant Account's associated account number, wallet address, account holder name, email address, and cryptocurrency company. (*See id.* ¶ 4.) Plaintiff also describes the statutes under which this forfeiture action is brought, 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A). (Compl. ¶¶ 5–7.)

Accordingly, I find that the Complaint complies with the formal requirements of Supplemental Rule G(2).

The Complaint describes how the Defendant Account was established and funded with illegal narcotics sales proceeds pursuant to instructions from Sources associated with drug trafficking organizations. (*See id.* ¶¶ 20–24.) It, therefore, states "sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial" and meets the substantive requirement of Supplemental Rule G(2). *See* Suppl. R. G(2)(f).

**III. Substantial Connection Between the Defendant Account and the Offenses**

Plaintiff makes two claims for forfeiture of the Defendant Account: first, pursuant to 21 U.S.C. § 881(a)(6), as moneys "furnished by any person in exchange for a controlled substance," "traceable to such an exchange," or "used, or intended to be used to facilitate" a drug transaction in violation of 21 U.S.C. § 841, which prohibits drug trafficking ("First Claim") and, second, pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(1)(B)(i), which prohibits money laundering ("Second Claim"). (Compl. ¶ 1; *see also* Pl. Mem. at 9–11.)

Plaintiff bears the burden of demonstrating that, "by a preponderance of the evidence, [the defendant account] is subject to forfeiture." 19 U.S.C. §§ 983(c)(1). Because Plaintiff alleges that the Defendant Account constitutes "property. . . which constitutes or is derived from proceeds traceable"

to the criminal offenses of drug trafficking and money laundering, it must also "establish that there was a substantial connection between the property and the offense[s]." 19 U.S.C. §§ 983(c)(3).

### *A. First Claim of Forfeiture under 21 U.S.C. § 881(a)(6) for Drug Trafficking*

"If the Government seeks forfeiture pursuant to 21 U.S.C. § 881(a)(6) on a theory that property constitutes proceeds traceable to an exchange for narcotics, it must demonstrate that those proceeds have a substantial connection to drug trafficking." *United States v. Approximately $447,420.00 in U.S. Currency, Seized from Safe Deposit Box #76100178, Held in the Name of Newton Croney*, No. 19-CV-3528 (AMD) (LB), 2020 WL 821904, at *4 (E.D.N.Y. Feb. 3, 2020) (internal citations omitted). The government need not prove that the property is substantially connected to any specific drug transaction, but may prove "more generally, based on the totality of the circumstances, that the property is substantially connected to narcotics trafficking." *See United States v. U.S. Currency in the Sum of $185,000*, 455 F. Supp. 2d. 145, 149 (E.D.N.Y. 2006); *United States v. $22,173.00 in U.S.* Currency, 716 F. Supp. 2d 245, 250 (S.D.N.Y. 2010). Courts have found a substantial connection between proceeds and drug trafficking when there is an "unusually large sum of money to carry" and the cash is "arranged in bundles of smaller bills wrapped in rubber bands, which are characteristics common when transporting drug money . . . ." *See United States v. $280,000 More or Less, in U.S. Currency*, No. 20-CV-4442 (AMD), 2021 WL 2980540, at *4 (E.D.N.Y. July 14, 2021) (internal citations omitted).

Here, the Defendant Account contains funds that came from two bags of cash collected by law enforcement in pickups arranged through Brokers connected with drug cartels. (*See* Compl. ¶¶ 21–22.) The large amount of cash and the manner in which the pickups were arranged is sufficient to establish a substantial connection between the Defendant Account and drug trafficking. Accordingly, I find that Plaintiff has demonstrated by a preponderance of the evidence that the Defendant Account is subject to forfeiture under 21 U.S.C. § 881(a)(6).

### *B. Second Claim of Forfeiture under 18 U.S.C. § 981(a)(1)(A) for Transaction Money Laundering*

Under 18 U.S.C. § 981(a)(1)(A), any real or personal property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 is subject to forfeiture to the United States.

Transaction money laundering "requires proof of both knowledge and specific intent." *United States v. Huezo*, 546 F.3d 174, 178 (2d Cir. 2008). To establish money laundering under Section 18 U.S.C. § 1956(a)(1)(B)(i), the plaintiff must show that the perpetrator knows "the property involved in a financial transaction represents the proceeds of some form of unlawful activity" and "conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity" and knows "that the transaction is designed in whole or in part" "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." The Second Circuit has "interpreted the latter element, 'knowing that the transaction is designed in whole or in part to conceal or disguise,' as requiring 'proof of intent to conceal.'" *Huezo*, 546 F.3d at 178 (citing *United States v. Stephenson*, 183 F.3d 110, 121 (2d Cir.1999)).

The narcotics proceeds in DEA Account #2, less an amount for commission, were transferred by law enforcement at the instruction of the Brokers, to the DEA Coinbase Account in exchange for 13.4843 BTC. (Compl. ¶ 22.) A Source then instructed law enforcement to transfer 13.02962468 BTC from the DEA Coinbase Account to the Defendant Account. (*Id.* ¶¶ 23–24.) The Brokers who instructed that the money be transferred into the cryptocurrency account worked with the drug cartels, and the Source who directed that the Bitcoin then be transferred to the Defendant Account had infiltrated networks of money launderers and money brokers affiliated with the Pecoso DTO. (*Id.* ¶¶ 13–15.) Moreover, the instruction to transfer the illegal proceeds from one account to another, and ultimately to a destination identified by the Brokers, is consistent with "layering methods used by money launderers to conceal the source and final destination" of drug proceeds. (*See id.* ¶¶ 18(e)–(f).)

Therefore, I find that Plaintiff has established that there is a "substantial connection" between the Defendant Account and the offense of money laundering, and that it has demonstrated by a preponderance of the evidence that the Defendant Account is subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

Accordingly, I respectfully recommend that the Defendant Account be found to be subject to forfeiture to the United States, pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiff's Motion for Default Judgment be granted, that the Court order that the Defendant Account be forfeited and condemned to the use and benefit of the United States pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A), and that the U.S. Department of Treasury, the Internal Revenue Service, and their respective agents and contractors shall dispose of the Defendant Account in accordance with all applicable laws and regulations.

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file an objection waives the right to further judicial review of this Report and Recommendation. *Caidor v. Onodaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

Peggy Kuo

PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
August 26, 2026